FLORIDA POWER & LIGHT
COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–258T.

United States Court of Federal Claims.

April 29, 2003.

Daniel L. Penner, Forth Worth, Texas, attorney of record for plaintiff.

Elizabeth D. Seward, with whom were Assistant Attorney General Eileen J. O'Connor and Acting Chief David Gustafson, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, for defendant.

## OPINION

WIESE, Judge.

Section 4481(a) of the Tax Code imposes a tax, at specified rates, "on the use of any highway motor vehicle ... [that] has a taxable gross weight of at least 55,000 pounds."

I.R.C. § 4481(a).[1] In the implementation of this statute, the Internal Revenue Service ("IRS") has issued regulations that exempt from the application of this tax certain specially designed vehicles intended for non-highway transportation functions. This tax refund suit presents three questions concerning the application of these regulations: (i) whether the vehicles at issue satisfy the criteria for exemption; (ii) whether plaintiff alternatively is entitled to the benefit of the exemption on the basis of equality of treatment among similarly situated taxpayers; and (iii) whether plaintiff may assert, as a basis for refund, that its vehicles fall below the taxable weight threshold.

This action is now before the court on defendant's motion for partial summary judgment with respect to questions (i) and (ii), defendant's motion to dismiss for lack of jurisdiction with respect to question (iii), and plaintiff's cross-motion for summary judgment. For the reasons set forth below, defendant's motions are granted and plaintiff's cross-motion for summary judgment is denied.

## FACTS

Plaintiff, Florida Power & Light Company ("FPL"), is an electric utility company doing business in the state of Florida. In conducting its business, FPL uses various types of specially designed trucks that are essential to the operation and maintenance of the company's power distribution system.[2] The chassis of these trucks, as supplied by the original manufacturer, included certain non-standard features, such as reinforced frames and increased engine power. In addition, the chassis were further modified by equipment manufacturers, in accordance with detailed specifications prepared by plaintiff, to

---

1. The Internal Revenue Code comprises Title 26 of the United States Code.

2. Four hundred and fourteen utility vehicles are the subject of this suit: 131 material handlers (equipped with buckets used to lift personnel for work on poles and power lines); 71 aerial lifts (also designed to elevate personnel); six cranes (designed to lift materials, poles, and transformers); 198 derricks (used to lift and move poles, transformers, and cable, as well as to dig holes and set poles); two rough terrain cranes; two power rodders (equipped with hydraulic motors

to push conductor cable through underground duct work up to 1,000 feet); an insulator washer (used to clean an energized electrical line without taking the line out of service, as well as to transport water to the work site in a 1,200–gallon capacity water tank mounted on the chassis); a four-drum pilot winder (used to pull conductor cable from pole to pole when building new lines or reconnecting old lines); a cable puller; and a pressure digger (used to dig through dense substrata).

accommodate the permanent mounting of the vehicle's work-performing equipment and to permit the use of that mounted equipment in the field. Pursuant to the specifications, virtually all of the vehicles at issue also were equipped with a pintle-type trailer hitch ("pintle hook") and a trailer towing package. With the addition of the pintle hook, the vehicles, depending upon their gross combined weight ratings, have towing capacities ranging from 6,000 to 20,000 pounds.

With respect to these specially designed vehicles, FPL filed Heavy Vehicle Use Tax Returns, Forms 2290, for the annual periods beginning July 1, 1992, through June 30, 1993, and July 1, 1993, through June 30, 1994. Following the payment of these taxes,[3] plaintiff filed a Claim for Refund of Excise Taxes, Form 8849, on June 24, 1995, requesting a refund of those payments. The refund amounts sought, as subsequently adjusted by the IRS, totaled $104,091 for 1993 and $100,936 for 1994. As the basis for its claim, plaintiff stated that the Heavy Vehicle Use Tax Returns filed for the years at issue "incorrectly included vehicles which do not meet the definition of a 'highway use' vehicle."

On February 26, 1997, the IRS notified plaintiff that it intended to disallow the claim for refund. In explaining its decision, the IRS acknowledged that the trucks at issue each contained a chassis that included permanently mounted machinery and equipment used in plaintiff's business, a qualification set forth in the relevant IRS regulation for exception from the definition of a highway use vehicle. But the IRS noted that the trucks were also equipped with pintle hooks which permitted the trucks to tow trailers and thus to haul loads other than or in addition to the permanently mounted machinery and equipment, a function, the IRS explained, that disqualified plaintiff's trucks from treatment as non-highway vehicles.

Plaintiff challenged the proposed disallowance of its refund claim, arguing that the transportation characteristics of its trucks

should be determined on the basis of the machinery and equipment that the vehicles were specifically designed to haul and not by the incidental hauling capacity attributable to their pintle hooks. On August 28, 1998, however, the IRS issued a notice by certified mail disallowing plaintiff's refund claim. Thereafter, plaintiff filed suit in this court.

## DISCUSSION

### I.

Section 4481(a) of the Tax Code provides: "A tax is hereby imposed on the use of any highway motor vehicle ... [that] has a taxable gross weight of at least 55,000 pounds ...." I.R.C. § 4481(a). The regulations implementing this statute provide that "the term 'highway vehicle' means any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways, whether or not also designed to perform other functions, but does not include a vehicle described in (d)(2) of this section." Treas. Reg. § 48.4061(a)–1(d)(1) (2002). Subsection (d)(2) excepts three classes of vehicles from this definition, two of which are at issue here—the "mobile machinery" exception and the "offhighway transportation" exception. We examine each below.

### A.

■ Section 48.4061(a)–1(d)(2)(i), referred to more generally as the mobile machinery exception, sets out three conjunctive requirements for exception from the definition of a highway vehicle:

A self-propelled vehicle, or trailer or semitrailer, is not a highway vehicle if it (A) consists of a chassis to which there has been permanently mounted (by welding, bolting, riveting, or other means) machinery or equipment to perform a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enu-

---

**3.** Specifically, plaintiff reported more than 400 vehicles with taxable gross weights ranging from 55,000 to 65,000 pounds that were expected to travel more than 5,000 miles on public roads during the ensuing twelve months. The annual heavy-use tax plaintiff paid on each vehicle varied from a minimum of $100 for a vehicle listed as having a total gross weight of 55,000 pounds to $320 for a vehicle with a total gross weight of 64,000 to 65,000 pounds.

merated operations if the operation of the machinery or equipment is unrelated to transportation on or off the public highways, (B) the chassis has been specially designed to serve only as a mobile carriage and mount (and a power source, where applicable) for the particular machinery or equipment involved, whether or not such machinery or equipment is in operation, and (C) by reason of such special design, such chassis could not, without substantial structural modification, be used as a component of a vehicle designed to perform a function of transporting any load other than that particular machinery or equipment or similar machinery or equipment requiring such a specially designed chassis.

The dispute in this case focuses on clause B, the second listed requirement. Specifically, the question is whether the addition of a pintle hook, and the supplementary hauling capacity thereby added to plaintiff's vehicles, precludes a finding that the vehicles' chassis have "been specially designed to serve *only* as a mobile carriage and mount ... for the particular machinery or equipment involved" (emphasis added).

Plaintiff maintains that its vehicles satisfy the design capability requirement set out in clause B. To support its position, plaintiff has provided the affidavits of Michael D. Paulson, FPL's supervisor of technical operations and the individual responsible for the design of the company's mobile equipment, and Daryl L. Heronemus, a design engineer and currently the operations manager of Altec Industries, Inc., a company that manufactures and assembles mobile equipment used by FPL and other public utility companies. Both individuals testified that the chassis design of plaintiff's vehicles is dictated by the weight of the special equipment that these vehicles transport and by the need to use that equipment safely and under conditions that may involve extremes in weather and/or terrain.[4] In addition, both individuals agreed that the design of the chassis is not influ-

enced by the addition of a pintle hook—its configuration would be the same whether or not the units were equipped with pintle hooks—and each stated that a pintle hook is not considered to comprise part of the vehicle's chassis.

In further support of this last point, Mr. Paulson called attention to the definition of "motor vehicle chassis" adopted by the Society of Automotive Engineers: "Motor vehicle chassis means the basic operating motor vehicle including engine, frame, and other essential structural and mechanical parts, but exclusive of body and all appurtenances for the accommodation of driver, property, or passengers, appliances, or equipment related to other than control." Society of Automotive Engineers, Inc., *SAE Glossary of Automotive Terms* 247 (2d ed.1992). According to Mr. Paulson, then, a pintle hook is an appurtenance to the chassis.

Based on the testimony of Mr. Paulson and Mr. Heronemus and on SAE's definition of "motor vehicle chassis," plaintiff urges the court to conclude that the chassis of the vehicles at issue have been specially designed to serve only as a mobile carriage and mount for the work-performing equipment. The fact that the chassis may accommodate the addition of a pintle hook, adds plaintiff, does not alter the design of the chassis or make the pintle hook part of the chassis.

Defendant disagrees with the distinction plaintiff draws between a vehicle's chassis design and its transportation capabilities. In defendant's view, any modification incorporated into a vehicle's frame (as, for example, the permanent bolting of a pintle hook to the frame's rear cross member) that adds to the vehicle's transportation capabilities (such as the additional hauling capacity made possible by the pintle hook) is a modification to the chassis design. Hence, defendant asserts, plaintiff cannot successfully argue that the chassis design of its vehicles is confined only to the transportation of the mounted equipment.

4. Modifications made by Altec to the vehicles' original chassis include the addition of (i) reinforced subframing (consisting of a box-like structure with longitudinal cross members) together with compression plates (installed between the frame and subframe) to permit the unit to withstand the torsional stresses imposed by the articulation of the deck equipment; (ii) outriggers to stabilize the equipment when in use; (iii) counterweights (ranging from a few hundred to 3,000 pounds) on cranes, diggers, and aerial devices; and (iv) rear cross members.

We agree with defendant's position. The regulation at issue limits the mobile machinery exception to those vehicles with a chassis "designed to serve *only* as a mobile carriage and mount ... for the particular machinery or equipment involved." Treas. Reg. § 48.4061(a)–1(d)(2)(i)(B) (emphasis added). The addition of a pintle hook to the chassis, whether viewed as a reconfiguration of the chassis (as defendant argues) or simply as an appendage to it (as plaintiff maintains), results in a modified chassis that facilitates the vehicle's transportation of equipment and supplies in addition to its principal load. Because the chassis was designed for such a dual use, it cannot be claimed that the chassis was specially designed to serve only as a mobile carriage and mount for the particular machinery or equipment involved. Based on this reasoning, we conclude that the addition of a pintle hook precludes the application of the mobile machinery exception.

■ In an effort to persuade us to reach a contrary conclusion, plaintiff refers us to several private letter rulings by the IRS classifying trucks equipped with pintle hooks as non-highway vehicles. As defendant points out, however, private letter rulings have no precedential value in that they do not represent the IRS's position as to taxpayers generally and thus are irrelevant in the context of litigation brought by other taxpayers. *See* I.R.C. § 6110(k)(3); Treas. Reg. § 601.201(*l*)(6) (2002). Even if we were inclined to take these rulings into consideration, however, we would find them unhelpful. These rulings fail to explain how a regulation that restricts the qualification for tax exemption to a chassis specially designed to serve *only* as a mobile carriage and mount for particular machinery and equipment can be satisfied by a chassis that has been designed, as these rulings acknowledge, to serve *primarily* as a mobile carriage and mount for such equipment.

■ Having concluded that the addition of a pintle hook precludes the application of the

mobile machinery exemption, we turn next to the related question of whether an insulator washer, fitted with a 1,200–gallon water tank, similarly falls outside that exception. Defendant claims that it does. An insulator washer, *i.e.*, a vehicle used to clean an energized electric utility line without having to take the line out of service, is equipped with a 75–foot boom and a high-pressure water pump to feed water through a nozzle located at the end of the boom. The insulator washer also transports water to the work site in a 1,200–gallon capacity water tank that is mounted on the chassis. It is the capacity of this water tank that is the focus of defendant's argument.

Defendant maintains that a chassis that incorporates a 1,200–gallon water tank cannot be considered to have been designed to serve only as a mobile carriage and mount for the work-performing equipment, *i.e.*, the boom and the high-pressure water pump. Rather, a chassis equipped with a 1,200–gallon water tank, like a chassis equipped with a pintle hook, has been designed to meet a dual transportation function. And that duality of function, asserts defendant, disqualifies vehicles with such a chassis from exception from the heavy vehicle use tax. Based on our prior discussion of chassis equipped with pintle hooks, we agree that the addition of a 1,200–gallon water tank precludes the application of the mobile machinery exception.

### B.

■ Despite our conclusion that its vehicles are ineligible for the mobile machinery exception, plaintiff contends that its vehicles satisfy the requirements for the off-highway transportation exception set forth in Treas. Reg. § 48.4061(a)–1(d)(2)(ii).[5] Subsection (d)(2)(ii) provides:

A self-propelled vehicle, or a trailer or semitrailer, is not a highway vehicle if it is (A) specially designed for the primary

5. The mobile machinery and off-highway transportation exceptions to the definition of a highway use vehicle are distinct. The mobile machinery exception assumes that a vehicle is roadworthy and focuses on the design of its chassis, *i.e.*, whether it is limited solely to the

transportation of particular job-site equipment. The off-highway exception, by contrast, focuses on a vehicle's transportation capabilities, *i.e.*, whether it has been designed to transport its load primarily off-road rather than over the public highways.

function of transporting a particular type of load other than over the public highway in connection with a construction, manufacturing, processing, farming, mining, drilling, timbering, or operation similar to any one of the foregoing enumerated operations, and (B) if by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired. For purposes of applying the rule of (B) of this subdivision, account may be taken of whether the vehicle may travel at regular highway speeds, requires a special permit for highway use, is overweight, overheight or overwidth for regular use, and any other relevant considerations.

Plaintiff maintains that its vehicles meet this two-part test. Specifically, plaintiff claims that its trucks were designed for the primary function of transporting loads over terrain other than the public highways in connection with a construction or similar operation, and that by virtue of this design, use of the trucks in the transportation of their loads over the public highways is substantially limited or substantially impaired. We find scant evidence in the record, however, to support the first point and none to support the second.

In support of its contention that its trucks were designed primarily for off-highway transportation, plaintiff again refers the court to the affidavit of Mr. Heronemus, the operations manager for the mobile equipment manufacturer. In his affidavit, Mr. Heronemus explained that "[b]ecause of its frequent off-road use in sometimes extreme conditions, FPL's mobile equipment units ... are integrally designed to meet the extremes of expected service, including positioning such units by the pushing and pulling of them by tracked vehicles in deep mud or sand." We do not consider this explanation sufficient to establish that plaintiff's trucks were "specially designed for the *primary* function of transporting a particular type of load other than over the public highway" (emphasis added). Rather, a fair reading of the affidavit indicates that plaintiff's vehicles were designed to satisfy the need for *frequent* off-road use. That is not the same,

however, as saying that the vehicles were designed *primarily* for off-road use.

Even if we were to read the affidavit more favorably than its plain meaning would allow, it would not bolster plaintiff's position. As indicated above, the off-highway transportation exception requires a showing not only that a vehicle has been designed primarily for off-highway use, but also that because of that design, use of the vehicle to transport its load over the public highways is "substantially limited or substantially impaired." Plaintiff's vehicles suffer no such limitation. To the contrary, plaintiff's vehicles are equipped with tires that enable them to transport their heavy loads over the public highways at highway speeds. Indeed, the vehicles regularly travel more than 5,000 miles per year on the public highways and require no special permit to do so.

Despite these considerations, plaintiff argues that the use of its vehicles on the public highways is in fact substantially impaired because of design constraints (dictated by the requirements of their mounted machinery) that make them more costly to operate, *e.g.*, the vehicles are heavier, less fuel-efficient, and travel at slower speeds than vehicles designed for ordinary highway transportation purposes. We cannot accept this argument.

If a vehicle's design would render the cost of its operation on the public highways unprofitable, then the use of that vehicle on the public highways could indeed be regarded as substantially impaired or substantially limited. *See. e.g., Flow Boy, Inc. v. United States,* 83–1 U.S.T.C. (CCH) ¶ 16,395, 1982 WL 1735 (W.D.Ok.1982), *aff'd,* 84–1 U.S.T.C. (CCH) ¶ 16,418, 1984 WL 15513 (10th Cir. 1984) (upholding a jury's determination of substantial impairment based on evidence demonstrating that economically profitable use of the taxpayer's hot-mix asphalt trailer could be achieved only through the transportation of loads that exceeded the highway weight limits). Plaintiff offers us no facts, however, to suggest that we encounter such a situation here. Absent such an extreme case, the court must reject plaintiff's argument that the regulation's words "substantially limited or substantially impaired" are essentially synonymous with impaired effi-

ciency of vehicle operation. Thus, the court concludes that plaintiff has failed to demonstrate that its vehicles qualify for the off-highway transportation exception.

## II.

■ In addition to claiming that its vehicles satisfy the regulatory criteria for exemption from the highway use tax, plaintiff argues in the alternative that it is entitled to such an exemption pursuant to the IRS's obligation to ensure equality of treatment among similarly situated taxpayers. Specifically, plaintiff alleges that other utility companies, operating as competitors of plaintiff and using the same or similar mobile equipment, are the beneficiaries of private letter rulings granting them exemption from the highway use tax. Consequently, plaintiff argues, by having to pay a tax that its competitors do not, plaintiff suffers economic harm and is unfairly burdened. Such a result among similarly situated taxpayers, plaintiff maintains, reflects an administration of the tax laws that is prohibited under the ruling in *IBM v. United States*, 170 Ct.Cl. 357, 343 F.2d 914 (1965). In plaintiff's view, *IBM* requires that the favorable private letter rulings purportedly granted to its competitors must also be granted to plaintiff. We cannot accept this argument.

Private letter rulings represent the IRS's individual response to a particularized inquiry from a specific taxpayer and, as such, have no precedential value. *See* I.R.C. § 6110(k)(3) ("a written determination may not be used or cited as precedent"); Treas. Reg. § 601.201(*l*)(6) ("A ruling issued to a taxpayer with respect to a particular transaction represents a holding of the Service on that transaction only."). This does not mean, of course, that private letter rulings cannot be looked to as a source of guidance in understanding the IRS's interpretation of the tax laws. *See Hanover Bank v. Commissioner*, 369 U.S. 672, 686, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962) ("such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws"). What it does mean, however, is that plaintiff cannot claim entitlement to a particular tax treat-

ment on the basis of a ruling issued to another taxpayer. *Id.* ("petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them").

In *IBM*, that company's principal competitor, Remington Rand, had been granted the benefit of a favorable tax ruling that exempted certain of its equipment from the business machines excise tax. IBM promptly sought the same treatment and also filed a claim for refund. Several months after issuance of the favorable ruling, the IRS refunded the excise taxes that Remington Rand had paid. In the meantime, however, the IRS had taken no action with respect to IBM's pending requests. Then, two years later, the IRS decided to revoke, but only prospectively, the favorable ruling it had granted Remington Rand and, at the same time, denied IBM's request for a refund. As a result, from the date it received a favorable ruling until the date of the ruling's revocation, Remington Rand was able to market its products free of the business machines excise tax that IBM was required to collect from its customers and that, as a result, had increased the cost of IBM's equipment.

In addressing this situation, the court concluded that the IRS's failure to relieve IBM of the burden resulting from the unequal imposition of the excise tax was an abuse of the discretion granted the IRS under I.R.C. § 7805(b) "to limit retroactive application [of rules and regulations] to the extent necessary to avoid inequitable results." 343 F.2d at 923 (quoting *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957)). Consequently, the court ordered that IBM be granted a refund of the excise taxes it had been required to pay during the years Remington Rand had been relieved of the burden of those taxes.

In explaining this result, the court was careful to point out that its decision did not intend to signal a departure from the principle, recognized in numerous cases, "that one taxpayer has no right to rely on an incorrect private letter ruling to another." *Id.* at 924. Such cases, the court explained, do not implicate the IRS's failure to exercise its discretion under section 7805(b) in situations where

the suing taxpayer had asked for a ruling. Rather, the court observed, they involve "instances in which the taxpayer simply claimed freedom from the tax on the basis of a private ruling to a separate person." *Id.* But the situation in *IBM*, the court noted, was distinguishable—it "rest[ed] on the wholly different basis that IBM, having taken the pains to ask promptly for its own ruling, was entitled to have the Service's ruling, in response to that request, controlled by the standard of equality and fairness incorporated in Section 7805(b)." *Id.* FPL can make no similar claim. Having never requested a ruling of its own, plaintiff can hardly now say that the IRS has dealt with it unfairly. In short, plaintiff's reliance on *IBM* is misplaced.[6]

### III.

Plaintiff's final argument to support a refund of the heavy use taxes it paid involves the weight of its vehicles. Plaintiff claims that approximately half of its trucks had a gross weight that fell below the taxable threshold of 55,000 pounds. Because no heavy vehicle use tax was owed on these vehicles in the first instance, plaintiff maintains, no tax should have been collected and therefore a refund is now due. Defendant responds by saying that plaintiff did not present this argument to the IRS as part of its refund claim and, therefore, plaintiff cannot raise this argument for the first time as part of this litigation. We agree.

Section 7422(a) of the Tax Code prohibits the filing of any suit or proceeding for the recovery of any internal revenue tax alleged to have been excessive or wrongfully collected "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]." The regulation implementing this statutory requirement, Treas. Reg. § 301.6402–2(b)(1), specifies that "[t]he claim [for refund] must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Based on a review of the record, we conclude that plaintiff failed to present this ground for refund in a manner sufficient to have alerted the IRS to the taxpayer's contention that the trucks fell below the taxable weight threshold. As a result, the claim must be regarded as a new claim and as such cannot be presented as part of this refund suit.

Plaintiff filed its Claim for Refund of Excise Taxes on June 24, 1995. In section 9 of the form, plaintiff explained that "[f]or the return years July 1, 1985 through July 1, 1993, the Forms 2290, Heavy Vehicle Use Tax Returns, have incorrectly included vehicles which do not meet the definition of a 'highway use' vehicle. Therefore, we are filing Form 8849 to claim a refund of erroneous taxes paid. The attached schedule details the number of vehicles incorrectly reported by year." The "attached schedule" consisted of an eleven-page itemization of plaintiff's vehicles grouped into categories A through K—a grouping that presumably paralleled, in part, the weight categories (A through W) that were listed in the Heavy Vehicle Use Tax Return. Each page of the schedule contained the following heading: "Vehicles That May Now Be Exempt From Highway Use Tax Due to Recent Statute Changes." Further, each page contained approximately 45 separate line entries that provided a description of the various vehicles according to their type, serial number, date of placement into service, inclusion of a pintle hook, and gross weight. Although most of the vehicles listed fell below 55,000 pounds, plaintiff did not highlight this fact either in the schedule listings or in its written explanation provided on the refund form.

If the intended focus of plaintiff's refund claim was vehicle weight, the IRS did not understand it as such. Rather, the IRS construed the claim's description of "vehicles which do not meet the definition of a 'highway use' vehicle" as a reference to the mobile machinery exception rather than as a reference to exclusion based on vehicle weight. Accordingly, in its notice advising plaintiff of the proposed disallowance of its claim, the IRS described the vehicles in question as

---

**6.** In view of the conclusion we have reached, it is unnecessary to discuss the particular letter rulings on which plaintiff relies. We point out, however, that of those twelve rulings, only two involve trucks equipped with pintle hooks.

"self propelled trucks with [gross vehicle weight ratings] from 55,000 to 65,000 pounds," *i.e.*, vehicles fully within the weight class to which the highway use tax would apply. Starting from this premise, then, the IRS's notice went on to disallow plaintiff's claim for the reasons previously noted: the listed vehicles did not meet the requirements of the mobile machinery exception.

In its response to the IRS's notice of proposed disallowance, plaintiff made no mention of vehicle weight and did nothing to alter the IRS's understanding of the basis for the claim. To the contrary, the entirety of plaintiff's six-page response was directed toward demonstrating that the vehicles at issue did indeed come within the exception to the definition of a highway use vehicle (*i.e.*, that the supplemental hauling capacity provided by the addition of a pintle hook did not render the chassis ineligible for exception). Plaintiff offered no argument that because the gross weights of its vehicles fell below the taxable threshold, no tax was owed in the first instance. In fact, plaintiff concluded its response as follows: "FPL asserts its vehicles meet all three exception criteria provided by Treasury Regulation section 48.4061(a)–1(d)(2)(i). Accordingly, by the terms of the applicable statutes and the above cited case law and other cited authority, FPL's vehicles are not highway vehicles and are exempt from the Heavy Vehicle Use Tax imposed by Code section 4481."

As noted above, pursuant to I.R.C. § 7422(a), before bringing any suit or pro-ceeding for recovery of taxes paid, a taxpayer must first file a claim for refund with the IRS that "set[s] forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). Manifestly, plaintiff's refund claim does not satisfy this requirement. Even if we assume that the claim as initially submitted said enough, when objectively assessed, to have put the IRS on notice that the reference to vehicles that "do not meet the definition of a 'highway use' vehicle" was intended as a reference to vehicles with gross weights that fell below the taxable weight threshold rather than to vehicles exempt from tax on the basis of chassis design, plaintiff's subsequent failure to clarify the IRS's misunderstanding of the focus of the claim cannot be disregarded in assessing the taxpayer's satisfaction of the regulation's requirements.[7]

The purpose of the regulation is to provide the IRS with "an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which [the IRS] is willing to defend." *Union Pac. R.R. v. United States*, 182 Ct.Cl. 103, 389 F.2d 437, 442 (1968). Clearly, this purpose is not met when, as in the instant case, in the face of the IRS's clearly expressed (but allegedly erroneous) understanding of a refund claim, the taxpayer, though given full opportunity to do so, not only fails to correct the IRS's misunderstanding but in fact affirma-

---

7. We do not mean to suggest that the IRS should have read plaintiff's claim as based on vehicle weight rather than chassis design. Indeed, such a reading would not have been apparent for several reasons. First, the claim's reference to "vehicles which do not meet the definition of a 'highway use' vehicle" is a phrase that, when read in the context of the regulatory language itself, is more logically understood as a reference to vehicles that are classified as exceptions to the definition of a highway use vehicle than as a reference to vehicles that do not come within the definition as an initial matter. Second, the heading that introduced each page of the schedule attached to plaintiff's refund claim—"Vehicles That May Now Be Exempt From Highway Use Tax Due to Recent Statute Changes"—was similarly unenlightening. The increase in the taxable weight threshold to which the heading presumably refers—a change in the imposition of the heavy vehicle use tax from vehicles with gross weights of at least 33,000 pounds to vehicles with gross weights of at least 55,000 pounds—refers to a legislative change that had occurred more than a decade earlier as part of the Tax Reform Act of 1984. See Pub.L. No. 98–369, Tit. IX (Highway Revenue Provisions), 98 Stat. 494, 1003 (1984). Finally, as pointed out above, the refund claim contained no words that might help focus the IRS's attention on the issue of vehicle weight. The fact that the vehicle weights appeared as part of the information contained in the vehicle listings is not enough to charge the IRS with knowledge of that information. Absent some instruction from the taxpayer as to what the listings were intended to show, the IRS was under no duty to study the listings in order to draw from them the details of an otherwise unspecified claim.

tively endorses it by addressing its merits. Because plaintiff has failed to meet the requirement of I.R.C. § 7422(a), we are without jurisdiction to hear the claim that its vehicles fell below the taxable weight threshold.

## CONCLUSION

For the reasons set forth above, (i) defendant's motion for partial summary judgment with respect to plaintiff's claims for exemption from the highway use tax is GRANTED, (ii) defendant's motion to dismiss for lack of jurisdiction plaintiff's claims with respect to the taxable gross weight of approximately half of the vehicles at issue is GRANTED, and (iii) plaintiff's cross-motion for summary judgment is DENIED. The court will defer entry of judgment in accordance with this opinion pending the parties' resolution of the tax status of three of plaintiff's vehicles that were not addressed in defendant's motion for partial summary judgment.