MYLES LORENTZ, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2901–09.        Filed January 25, 2012.

P used specialized but highway-legal trucks (known as "tractors") and "belly-dump" trailers in its business. P's tractors operated most economically off highway. P's tractors and trailers were modified for heavy use, but no legal or technical obstacles prevented P from driving either tractors or trailers on highways. P's tractors could pull trailers other than the belly-dump trailers; likewise, P's trailers could be moved by vehicles other than P's tractors. Approximately 40 percent of P's tractors' mileage during the years in question occurred off highway. For tax years ending January 31, 2005, and January 31, 2006, P claimed credits under I.R.C. secs. 34(a)(3) and 6427(l)(1), for its tractors' "nontaxable use", under the "off-highway business use" exception of I.R.C. sec. 6427(l)(2). R disallowed P's credits. P stipulates that its tractors and trailers are "highway vehicles" under I.R.C. sec. 6421 per sec. 48.4061(a)–1(d)(1), Manufacturers & Retailers Excise Tax Regs., but argues that the "special-design" and "substantial impair[ment]" exception of sec. 48.4061(a)–1(d)(2)(ii), Manufacturers & Retailers Excise Tax Regs., applies, making them off-highway vehicles and the fuel they use off-highway creditable. *Held*: The tractors and trailers are not analyzed together for purposes of interpreting the term "vehicle". The plain language of sec. 48.4061(a)–1(d)(1), Manufacturers & Retailers Excise Tax Regs., and the fact that the tractors and trailers could each perform their designed functions paired with other vehicles indicate that tractors and trailers are each a distinct "vehicle" for purposes of the credit. *Held*, *further*, the tractors are not specially designed for off-highway use because, while "heavy duty" modifications allowed them to work off highway, they were in most respects identical to unmodified tractors used on highway and were not designed to transport a particular type of load. *Held*, *further*, the tractors are not substantially impaired with respect to on-highway use because they could fit and operate on a highway at regular highway speeds. *Held*, *further*, for tax year ending January 31, 2005, P's tractors do not qualify for the "off-highway transportation" exception in sec. 48.4061(a)–1(d)(2)(ii), Manufacturers & Retailers Excise Tax Regs. *Held*, *further*, for

40

tax year ending January 31, 2006, I.R.C. sec. 7701(a)(48) defines "highway vehicle" even more narrowly such that P's tractors do not constitute off-highway vehicles.

*Gordon P. Heinson*, for petitioner.
*William R. Peck*, for respondent.

OPINION

HOLMES, *Judge*: The Code gives a credit for fuel taxes paid on diesel consumed in an "off-highway business use." Myles Lorentz, Inc. (MLI), bought diesel for vehicles that it used in roadbuilding and mining, and which it moved from job to job. MLI is not claiming the credit for the fuel that its vehicles consume on highways, but it does want the credit for the fuel that they consume off public highways. Whether MLI gets the credit depends on exactly what vehicles we look at and whether those vehicles are "highway vehicles" under the Code and regulations.

## Background

MLI is in the business of moving dirt, and it moves the dirt with a fleet of Mack trucks. These trucks are tractors, but not the kind driven by farmers: They are called tractors because they can pull other things. They are also the sort of vehicles that get alphanumeric designations that those in the trade recognize, but no one else would: MLI's fleet had four RW713s, one TM600, and the rest a mix of RD690Ss and RD688Ss.[1] All these tractors were "heavy-duty"; i.e., they had lower-than-normal gear ratios, and their suspensions, axles, gearboxes, and chassis assemblies had all been modified to MLI's specifications to give them extreme strength and power.

MLI used these heavy tractors mainly to pull what are called "belly-dump" trailers—trailers that open at the bottom to dump their contents and that are hooked up to the fifth wheels of the tractors. MLI's trailers could each hold approximately 43 tons, and each had side panels made of steel to help hold their gargantuan loads. All of this would make the tractor-trailer combination a daunting thing for a mere pas-

---

[1] These numbers are drawn from MLI's records for its tax year ending January 31, 2005. MLI didn't give us much for the following year, but any subsequent change in the asset mix doesn't upset our analysis.

senger car to meet on the road. When MLI needed to move these behemoths, it altered the trailers by adding mud flaps and removing the trailers' steel side panels and "push bumpers"—special bumpers that enable bulldozers to push them along when they're used off highway.

These tractor-trailers were not only heavy-duty but used heavily. MLI registered its fleet of tractors for use in 21 states. In 2004 MLI drove them almost a million miles on and between projects in Minnesota, Wisconsin, North Dakota, Nebraska, and Oklahoma. In 2005 it used them in North Dakota, Kansas, and Colorado. A large part of this mileage was off road, but about 60 percent each year was on public highways. And the tractors did not rack up this mileage only while pulling fully loaded belly-dump trailers—MLI also used them either to haul the belly-dump trailers empty or to haul a completely different type of trailer that carried construction-support equipment. Even when empty, though, a tractor-belly-dump-trailer combination weighed about 20 tons. Most states have limits on the weight of vehicles using their highways—many at 40 tons (though Nebraska allows around 47). Yet even if laden with the maximum permissible load, the tractors could maintain regular highway speeds.[2]

MLI claimed a credit on its returns for the diesel consumed in 2004 and 2005 by the tractors on projects that were entirely off highway: $24,409 for the tax year ending January 31, 2005, and $12,967 for the year ending January 31, 2006. MLI did not claim a credit on either return for the fuel its vehicles used in projects which mixed off-highway use and on-highway use.

The Commissioner disallowed the entire amount as a credit for both tax years in his notice of deficiency.[3] But he did determine that MLI should be allowed the amount as an increased deduction for total fuel expense.[4] MLI wants the

---

[2] Neither the height nor the width of the tractors or trailers prevented MLI from using them on highways.

[3] Our Court is one of limited jurisdiction, and we hear only those cases Congress tells us we can. *See* sec. 7442; *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984). We don't typically have jurisdiction over this type of excise tax, *see* sec. 6211(a), but the Commissioner here disallowed the section 34 credits that MLI claimed on its income-tax returns, and we do have jurisdiction to redetermine the deficiency that resulted from that disallowance.

[4] The Commissioner applied the total expense to the tax year ending in January 2006—he carried the tax-year-ending-in-January-2005 portion forward in the form of a net-operating-loss deduction. This reduction of income also led to a redetermination of MLI's domestic-production-activities deduction.

greater benefit a tax credit would give it and, in challenging the notice of deficiency, now also asks us to allow it a credit for all the diesel its vehicles used while off highway, even on projects with mixed off-highway and on-highway use.

We set the case for trial in St. Paul, but then MLI and the Commissioner submitted it for decision on fully stipulated facts under Rule 122.[5] MLI's principal place of business was Minnesota when it filed its petition.

## *Discussion*

The Code taxes every gallon of diesel fuel that is to be used in the United States at a rate of 24.4 cents per gallon.[6] *See* sec. 4081(a)(2). If the government doesn't get its money from the diesel producer, either the retailer or the consumer can be on the hook. *See* sec. 4041(a)(1)(A) and (B).

But for the taxpayer whose vehicles use diesel off highway, there's a potential break. Sections 34(a)(3) and 6427(l)(1) tell the Commissioner to credit the tax imposed to the diesel's ultimate purchaser for each gallon of his "nontaxable use."[7] The Code lists several nontaxable uses, but the one driving this case is what section 6421(e)(2)(A) calls "off-highway business use." *See* secs. 6427(l)(2), 4041(b)(1)(A), (C). Section 6421(e) tells us that the first requirement for this credit is that a taxpayer be engaged in a trade or business or income-producing activity. No one disputes that MLI is. Section 6421(e) then defines off-highway business use by saying what it's not: It's not fuel used in a "highway vehicle" that's registered, or that should be registered, for highway use.

MLI admitted its vehicles were registered for highway use and didn't deny that they fell within the general definition of a "highway vehicle"—a highway vehicle is "any self-propelled vehicle, or any trailer or semitrailer, designed to perform a function of transporting a load over public highways,

[5] Unless otherwise noted, all section references are to the Internal Revenue Code as amended and in effect for each year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[6] This rate includes a 0.1-cent-per-gallon increase for the Leaking Underground Storage Tank Trust Fund (LUST tax). *See* secs. 4041(d)(1), 4081(a)(2)(B).

[7] In 2005 Congress enacted legislation that changed the amount of the credit a taxpayer could claim for diesel fuel used in a "nontaxable use." *See* Energy Policy Act of 2005, Pub. L. No. 109–58, sec. 1362(b), 119 Stat. at 1059–60. For fuel used before October 1, 2005, taxpayers could claim a credit for the LUST tax, so the applicable rate was 24.4 cents per gallon; after September 30, 2005, taxpayers could claim only a credit of 24.3 cents per gallon.

*whether or not also designed to perform other functions.*"[8] Sec. 48.4061(a)–1(d)(1), Manufacturers & Retailers Excise Tax Regs. (emphasis added). MLI steered us instead toward one of the exceptions to these general rules—the one for vehicles specially designed for off-highway transportation. *See* sec. 48.4061(a)–1(d)(2)(ii), Manufacturers & Retailers Excise Tax Regs. The off-highway exception has two requirements:

- *Special Design*—MLI's vehicles must be specially designed for the primary function of transporting a particular load (e.g., for mining or construction) other than on a public highway.
- *Substantial Impairment*—The special design must also substantially limit or substantially impair the transport of such load over the public highways. Relevant factors include, but are not limited to, whether
  - the vehicle travels at highway speeds;
  - the vehicle requires a special permit for highway use; or
  - the vehicle is too heavy, too high, or too wide for regular use.

*See id.*

If MLI can drive over these two speed bumps with its argument unrattled, it can claim the section 34(a)(3) credit for its tax year ending in 2005. But the regulation takes us only so far—relatively new section 7701(a)(48) applies to 2006.[9] And although Congress incorporated most of the regulation's language into that section, it also made a few changes which may or may not turn out to be important.

Because of this change in the law, we need to look at each year separately. But before we do that we have to answer a very important question common to both years—are the "vehicles" we're supposed to classify the giant tractors by themselves, or the tractors in tandem with the belly-dump trailers? Once we do this, we can figure out whether the

---

[8] "[T]he term 'public highway' includes any road (whether a Federal highway, State highway, city street, or otherwise) in the United States which is not a private roadway." Sec. 48.4061(a)–1(d)(1), Manufacturers & Retailers Excise Tax Regs.

[9] In 2004 Congress added paragraph 48 (defining off-highway vehicles) to section 7701(a) and made it apply for tax periods beginning after October 22, 2004. American Jobs Creation Act of 2004, Pub. L. No. 108–357, sec. 852(a), (c)(2), 118 Stat. at 1609. Because MLI's fiscal year runs through January, its tax year ending January 31, 2006, is the first to which section 7701(a)(48) applies.

"vehicle" is specially designed for off-highway use by applying the regulation for MLI's tax year ending in January 2005 and then deciding if section 7701(a)(48) leads to a different result for the tax year ending in January 2006.

A. *What Is a Vehicle?*

The parties agree that the regulation's definition of "highway vehicle" governs for both years. MLI, however, says its tractor-trailer combination is the "vehicle" we judge; the Commissioner argues that we should look at the tractors and trailers separately. The Commissioner has his reason: If the regulation applies separately to tractors and trailers, we need look only at the vehicle that *uses* diesel fuel—the tractor—and can ignore the design and use of the trailers.

We look first to see if the regulation has some plain meaning. *See Nat'l Educ. Ass'n v. Commissioner*, 137 T.C. 100, 111 (2011). This may not get us very far because the regulation defines a "vehicle" as consisting of "a chassis and a body * * * but does not include the vehicle's load." Sec. 48.4061(a)–1(d)(1), Manufacturers & Retailers Excise Tax Regs. But the rest of the regulation is more helpful: "Examples of vehicles * * * are * * * truck tractors, trailers, and semitrailers." *Id.* It also defines "highway vehicle" as "any self-propelled vehicle, *or* any trailer or semitrailer, designed to perform a function of *transporting* a load over public highways." *Id.* (emphasis added). And because the term "transport" includes the term "tow," *see id.*, we know that a *highway vehicle* includes a self-propelled vehicle *towing* a load over public highways.

We think this gives the Commissioner the better of the argument, and read the regulation like he does, as treating MLI's tractors as vehicles separate from its belly-dump trailers. Both by definition and by example the regulation distinguishes the two (it uses the disjunctive "or"), and it does not use a phrase such as "or a combination thereof." *See also Schlumberger Tech. Corp. v. United States*, 55 Fed. Cl. 203, 215 (2003) ("Given the clear language of the regulation and the consistent case law, the court sees no reason to couple the tractor and trailer").

MLI has failed to show that a belly-dump trailer that it hitches to a tractor becomes a single vehicle—in fact, the evi-

dence showed the contrary. The standard fifth wheel allows different kinds of trailers to be hitched to the same Mack tractor. (MLI actually hitched its tractors to trailers other than its belly-dump trailer when it needed to move construction-support equipment to a job site.) And the belly-dump trailers had off-highway bumpers that enabled them to be pushed by still another type of vehicle—bulldozers. This leads us to find that MLI's tractors and belly-dump trailers were separate vehicles. Since the tractors, not the trailers, consumed the diesel, they are what we will analyze. [10]

B. *Tax Year Ending January 2005: The Regulation*

That we don't find the tractor-trailer combination to be a single vehicle does not mean that the trailers are irrelevant to our analysis. For the first year at issue, we look to the regulation, and the first part of its definition of the off-highway-vehicle exception requires that MLI's tractors be "specially designed for the primary function of transporting a particular type of load other than over the public highway in connection with a construction * * * [or] mining" operation. Sec. 48.4061(a)–1(d)(2)(ii), Manufacturers & Retailers Excise Tax Regs. Remember that "transportation" includes "towing", so if the tractors were specially designed for the primary function of towing belly-dump trailers (or even, as MLI argues, for moving construction or mining material in those trailers), MLI would have a good argument.

We do not, however, find the design of MLI's tractors to be special in this sense. Caselaw teaches us that the word "primary" in the regulation does not mean "exclusive," *see Worldwide Equip., Inc. v. United States*, 605 F.3d 319, 324 (6th Cir. 2010), but instead something like "of first importance" or "principally", *see Malat v. Riddell*, 383 U.S. 569, 571–72 (1966). While the context in which the word "primary" is used is important—*Malat* looked at section 1221—there is nothing in the regulation or section 7701(a)(48) that suggests "primary" means anything else in this context. *See, e.g.*, *DeHaai v. Commissioner*, T.C. Memo. 1989–127 (applying

---

[10] Why then would the exceptions under section 48.4061(a)–1, Manufacturers & Retailers Excise Tax Regs., even list trailers, which by definition don't burn fuel? Presumably because that definition also applies to section 4051's heavy-vehicle retail tax, section 4071's highway-vehicle-tires tax, and section 4481's annual heavy-vehicle use tax. *E.g.*, sec. 48.4061(a)–1(d)(4), Manufacturers & Retailers Excise Tax Regs. Unlike the fuel excise tax, these taxes are not creditable under section 34.

*Malat* to section 1.167(a)–1(a), Income Tax Regs.). With that meaning in mind, we look at the functions of the MLI tractors' special design.

The first thing we find is that the tractors were not specially designed to primarily transport a *particular type of load*: They were not tailored to tow belly-dump trailers or, as MLI claims, even to transport construction and mining material.[11] They had a more general purpose—hauling very heavy loads—that allowed these tractors to pull a variety of different types of trailers (after all, the tractors had a standard fifth wheel) and the different types of loads that those trailers themselves could haul. The tractors had modified suspensions, axles, gearboxes, chassis assemblies, and lower-than-normal gear ratios. The parties agree that these features made the tractors "heavy-duty," but we can't discern from the special design of these "heavy-duty" tractors that they were designed for a particular type of load.[12]

We find, moreover, that the tractors were not designed primarily for *off-highway use*. While the modifications allowed the tractors to work off highway, they also allowed those same tractors to haul loads, large or small, on a highway. The parties agreed that MLI's modified tractors and the manufacturers' unmodified tractors were otherwise identical. In particular, the manufacturers' specifications for the tractors list the vehicles' application as "Class A Highway," which is the same application that unmodified tractors have. We therefore find that the tractors weren't designed for "the primary function of transporting a particular type of load other than over the public highway."

Even if MLI had successfully avoided plowing into the special-design requirement of the exception, it would still have to show that "by reason of such special design, the use of such vehicle to transport such load over the public highways is substantially limited or substantially impaired." Sec. 48.4061(a)–1(d)(2)(ii), Manufacturers & Retailers Excise Tax

---

[11] Although MLI *used* the tractors primarily to haul belly-dump trailers, the special-design requirement tells us to look at *design,* not actual use. *See, e.g.*, *Worldwide Equip., Inc. v. United States*, 605 F.3d 319, 325 (6th Cir. 2010).

[12] In a letter dated September 21, 2007, a Mack sales representative opined that Mack truck models CTP7 and RD686 were for construction use (but without stating how the "heavier" specifications were used in construction). These models were similar to the ones at issue. But even if we assumed the tractors' primary function was for construction, that fact would still leave us without anything in the record about whether they were designed for a particular type of load.

Regs. For MLI's tax year ending in January 2005, the governing regulation required that the special design substantially limit or impair the vehicles' *use on highways.* The regulation lists particular limits: Could the vehicles travel at normal highway speeds? Did they need a special permit to use the highways? Or were they too high or too wide or too heavy for regular highway use? *See id.* The substantial-limitation test would still be a problem because MLI has not shown that any of these limitations existed. [13]

The regulation does, however, allow us to consider "other relevant considerations," and these are what MLI points to. For starters, it highlights a limitation with the belly-dump trailers: MLI needs to remove the push-bumpers and side panels and add mud flaps before it can use the trailers on the highway. We agree that changing those parts would limit the belly-dump trailer—but because of the way we define "vehicle", we look only to the special design of the tractors, not the trailers, and ask whether there's any element of their design that substantially limits or impairs their highway use.

MLI does make one argument that is on point. Since the tare weight [14] of the tractor-trailer combination is so great, it not only gets lower fuel mileage; it can't carry as much cargo without exceeding state-imposed maximum-weight limits. This makes for a plausible argument that MLI's tractors are economically inefficient for highway use, even if physically capable of it.

MLI points to *Flow Boy, Inc. v. United States*, No. CIV–80–602–E, 1982 WL 1735 (W.D. Okla. Apr. 20, 1982), *aff'd*, 1984 WL 15513 (10th Cir. Jan. 20, 1984). [15] In *Flow Boy*, the vehicle looked a bit like a dump truck but discharged hot-mix asphalt via a conveyer belt rather than by gravity. The vehicle could travel at normal highway speeds, had accessories that permitted normal highway use, and was not too long, too wide, or too high. But the jury still found for the taxpayer, and that decision was affirmed on appeal. *See Flow*

---

[13] By MLI's own admission, the same would be true for the tractor-trailer combination if that was the vehicle we looked at: MLI's tractor-trailers did not require a special permit for highway use, could travel at normal highway speeds, and were not too high or too wide or too heavy for regular highway use.

[14] Tare weight is the weight of a vehicle without a load.

[15] The same Flow Boy semitrailer was at issue in *J.H. Holland Co. v. United States*, No. 75–1090–E, 1977 WL 1282 (W.D. Okla. Apr. 21, 1977) (applying the pre-1977 regulation), and a similar Flow Boy model swirled by in *Gateway Equip. Corp. v. United States*, 247 F. Supp. 2d 299 (W.D.N.Y. 2003).

*Boy*, 1984 WL 15513, at *2. The logic: It would be illegal for the vehicle to travel on public highways at full capacity, and because the vehicle had to be loaded to full capacity to be profitable, it could not economically operate with a lighter legal load. *Id.*

MLI's modified tractors are heavier than unmodified trucks, and we agree that they are not as fuel efficient as unmodified tractors. We also agree that they will bump up against state weight limits carrying less cargo than unmodified tractors. A Mack sales representative made the same point in a letter in which he wrote that Mack's modifications to the tractors made them "heavier and inefficient."

But we can't stop there, because in our reading the regulation requires more—it requires that the impairments or limitations be *substantial*, and here we find MLI's argument fails. Consider first how *Flow Boy* is distinguishable: In *Flow Boy*, the vehicles would have been *unprofitable* if carrying anything other than a full load. Although MLI's tractors, if fully loaded, could have gross weights of more than 60 tons, there's no evidence in the record in this case that MLI needed the tractors to be fully loaded to turn a profit. *See Fla. Power & Light Co. v. United States*, 56 Fed. Cl. 328, 333 (2003) (distinguishing *Flow Boy* because additional costs attributable to vehicles' weight, speed, and fuel efficiency did not render public-highway operations unprofitable).[16]

We also don't think that MLI's tractors could have been all that limited. They did, after all, spend much of their time on public highways—almost 60 percent of all the miles traveled by the tractors when hauling the trailers was on public highways during its fiscal year ending in January 2005.[17] (MLI did not provide information for fiscal year 2006.) We therefore find that the weight of the tractors was not a substantial limitation under the regulation.

---

[16] The court evaluating Flow Boy units in *Gateway* also found they had to be fully loaded to be profitable. *Gateway*, 247 F. Supp. 2d at 308. And at least one other court has read the regulation as focused on safety, not economic efficiency. *See Schlumberger Tech. Corp. v. United States*, 55 Fed. Cl. 203, 222 (2003). But MLI didn't argue that the weight of its tractors made them unsafe on public highways.

[17] Unlike the special-design test, the substantial-limitation test focuses on use, and we thus read the regulation as letting us analyze the particular use a taxpayer makes of his vehicles.

C. *Tax Year Ending January 2006: Effect of the New Section*

Like the regulation, section 7701(a)(48)(A)(i) looks to both a vehicle's design and whether that design substantially limits or impairs its use on the public highways:

A vehicle shall not be treated as a highway vehicle if such vehicle is specially designed for the primary function of transporting a particular type of load other than over the public highway and because of this special design such vehicle's capability to transport *a load* over the public highway is substantially limited or impaired. [Emphasis added.]

Section 7701(a)(48)'s phrasing is different from the regulation in four ways:

• the change of the phrase "such load" to the more general "a load";

• "a vehicle's design is determined solely on the basis of its physical characteristics," sec. 7701(a)(48)(A)(ii);

• the listed considerations for substantial limitation or impairment are now "the size of the vehicle, whether such vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles, and whether such vehicle can transport a load at a sustained speed of at least 25 miles per hour," sec. 7701(a)(48)(A)(iii); and

• the ability of a vehicle to "transport a greater load off the public highway than such vehicle is permitted to transport over the public highway" is immaterial, sec. 7701(a)(48)(A)(iii).

None of the differences between the statute and the regulation helps MLI. For example, if towing the belly-dump trailer over a public highway were to prove unprofitable for MLI and we were to find substantial limitation or impairment under the regulation, this factor alone would now not be enough under the statute. The change to "a load" from "such load" means that we would have to take the additional step of evaluating the tractors' efficiency when transporting, for example, another kind of trailer that could also be hooked to the tractors' fifth wheels.

Next, we read the phrase "a vehicle's design is determined solely on the basis of its physical characteristics" to restrict us from looking at a vehicle's actual use in deciding whether it was specially designed for a particular type of off-highway load. MLI's use of the tractors to tow belly-dump trailers full

of dirt and other material is now an inappropriate fact for us to consider because it goes beyond looking at only the physical characteristics of the tractors.

As for the substantial-limitation-or-impairment factors that the Code now lists, they are nearly the same as those in the old regulation, except that instead of describing whether MLI's tractors may travel at regular highway speeds, we now may consider whether the tractors, with a load, can sustain speeds of 25 miles per hour on a public highway. We know that MLI's tractors could travel at regular highway speeds while transporting a maximum load as permitted by state law. There's no evidence that it can't sustain that speed over any particular period of time, let alone sustain a speed of only 25 miles per hour.

Finally, there's no doubt that MLI's tractors can haul more weight off a public highway than on one because their hauling capacity exceeds that which is permissible under state laws. The statute explicitly tells us this fact is now "immaterial".

All of this means that, for MLI's tractors, the statute is even less liberal than the regulation. And thus MLI's arguments for the work its vehicles did in 2006 also fail.

*Decision will be entered for respondent.*