**AMERGEN ENERGY CO., LLC, by and through EXELON GENERATION CO., LLC, tax matters partner, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–108 T.**

United States Court of Federal Claims.

Sept. 1, 2010.

Joel V. Williamson, Chicago, IL, for plaintiff. Scott M. Stewart, Chicago, IL, of counsel.

Cory A. Johnson, United States Department of Justice Tax Division, with whom were John A. DiCicco, Acting Assistant Attorney General, Steven I. Frahm, Chief, Court of Federal Claims Section, Mary M. Abate, Assistant Chief, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

The court now has before it Plaintiff's Motion to Compel Answers to Requests for Admission (Pl.'s Mot.), defendant's response brief (Def.'s Opp.) and plaintiff's reply brief (Pl.'s Reply).[1] For the reasons stated below, plaintiff's motion is denied. To the extent that plaintiff's reply brief also requests that the court compel defendant to answer plaintiff's first set of interrogatories and second request for document production, Pl.'s Reply at 1 n. 1, that request is denied as well.

## BACKGROUND

### I. Relevant Facts[2]

This is a readjustment of partnership items case under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), codified at 26 U.S.C. §§ 6221–6234 (2006). Plaintiff is AmerGen Energy Co., LLC (AmerGen), by and through Exelon Generation Co., LLC, AmerGen's tax matters partner. AmerGen purchased three nuclear power plants and took over their operation in 1998–99.[3] Compl. ¶¶ 1, 25, 30, 36–37, 43–44, 50. According to plaintiff, the tax treatment of "assumed decommissioning liabilities" was the subject of private letter rulings (PLRs) issued both to the sellers of the nuclear power plants and to AmerGen. Id. ¶¶ 18, 57–58; Pl.'s Mot. at 2–4. The primary dispute in this case, at least as regards plaintiff's motion, concerns the tax treatment of any de-

commissioning liabilities that were assumed by AmerGen. Plaintiff states that to win on this issue, it must show that the assumed decommissioning liabilities were not contingent, i.e., that these liabilities were fixed and reasonably determinable in amount at the time of the purchases. See Compl. ¶ 66; Pl.'s Mot. at 8–9.

### II. Procedural History

Plaintiff filed its complaint on February 20, 2009. Discovery is underway, but disputes have arisen. The primary dispute before the court at this time concerns plaintiff's requests for admission regarding the PLRs issued to the sellers of the nuclear power plants. In essence, plaintiff asserts that these PLRs are relevant to the issue it must prove to win its case:

> These Requests for Admission would demonstrate that the factual and related legal questions regarding whether the decommissioning liabilities at issue in this case were fixed and reasonably determinable at the time they were assumed by [plaintiff and] have already been determined [in the sellers' PLRs], and would allow the Court to resolve on summary judgment the core legal issue in this case, which is whether [plaintiff] may include in its tax basis of each facility the nuclear decommissioning liability it assumed as part of the purchases, thus avoiding a trial and conserving judicial resources.

Pl.'s Mot. at 7. In plaintiff's view, the PLRs issued to the sellers of the nuclear power plants constitute evidence that the decommissioning liabilities assumed by plaintiff were fixed and reasonably determinable in amount at the time of the purchases. Id. at 18 ("The United States has already decided [in the PLRs issued to the sellers] that the nuclear decommissioning liabilities that are at issue in this case are fixed and reasonably determinable.").

---

1. Page references for plaintiff's motion refer to the supporting memorandum attached thereto, unless otherwise specified.

2. The court makes no findings of fact in this opinion, and does not reach the merits of plain-

tiff's claims. The facts recited here are taken from the complaint and from plaintiff's motion.

3. The entity AmerGen no longer exists. Compl. ¶ 7.

Defendant opposes plaintiff's motion, and argues that the PLRs in question are irrelevant to plaintiff's claims in this suit:

> [A]n investigation into the reasons why the IRS did or did not make certain statements in various private letter rulings, as well as any attempt now to interpret and understand the qualifications to those statements, and to compare the much more limited set of (untested) factual representations made to the IRS ten years ago to the actual, and much more complete, record that will be presented here, can have no bearing on the issues in this case.

Def.'s Opp. at 3. As to other requests for admission not related to the PLRs issued to the sellers, defendant argues that responding to those requests cannot proceed until more progress on discovery has been made. *Id.* at 3–4. Plaintiff's motion appears to address only the requests for admission related to the sellers' PLRs, Pl.'s Mot. at 7–8, and does not clearly state a position as to other requests for admission.

## DISCUSSION

### I. Standard of Review

Rule 36 of the Rules of the United States Court of Federal Claims (RCFC) states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of RCFC 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." [1] RCFC 36(a)(1). The party receiving these requests for admission must answer:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for

failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

RCFC 36(a)(4). A party may also object to a request for admission, but "[t]he grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial." RCFC 36(a)(5).

If the party requesting admissions is not satisfied with the answers or objections provided by the party served,

> [t]he requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.

RCFC 36(a)(6). Plaintiff's motion is brought under RCFC 36(a)(6), and although styled a motion to compel, is most accurately described as a motion challenging the sufficiency of defendant's answers and objections to certain requests for admission.

As other courts have noted, the purpose of requests for admission is to eliminate issues over facts that are not in dispute, and to narrow issues to be tried before the court. *See, e.g., Stockdale v. Stockdale,* No. 4:08–CV–1773 CAS, 2009 WL 5217001, at *1 (E.D.Mo. Dec.30, 2009) ("Requests for admission are . . . intended to save costs by establishing uncontested facts without the time, trouble and expense of proving these facts through discovery.") (citation omitted). A distinction between requests for admission and discovery requests must be made however: "requests for admission are not designed to obtain discovery of the existence of facts, but rather are intended to establish the admission of facts about which there is no real dispute." *Id.* at *2. One ground, among many, that can justify an objection to a request for admission is that the request for admission seeks an admission that is irrelevant to the case being tried. *See, e.g., Estate*

---

4. RCFC 36 substantively conforms to Rule 36 of the Federal Rules of Civil Procedure, and cases interpreting Fed.R.Civ.P. 36 are useful authority in interpreting RCFC 36.

of *Cederloff v. United States,* No. DKC 08–2863, 2010 WL 157512, at \*2 (D.Md. Jan.13, 2010) (denying a Rule 36(a)(6) motion because the requests for admission in question were "wholly irrelevant" to the case). With these principles in mind, the court turns to plaintiff's challenge to defendant's objections to some of plaintiff's requests for admission.

## II. Which Objections by Defendant Are Challenged by Plaintiff?

Plaintiff attached a copy of its First Requests for Admission to its motion, a document which apparently was served on defendant on February 3, 2010.[5] There are seventy-seven requests for admission included in the document. Among defendant's seventy-seven responses to these requests for admission, also attached to plaintiff's motion, plaintiff challenges more than forty. The court was somewhat perplexed to find that plaintiff's references to its challenges to defendant's responses, which might be expressed in various lists of numbered responses to requests for admission, suffer from inconsistencies. As a result, plaintiff's motion and its reply brief present only a rough and approximate identification of defendant's responses that plaintiff has moved the court to review.

One such list of challenges, which apparently is meant to be comprehensive, cites defendant's responses numbered 10–16, 18–22, 24–25, 27, 33–39, 41–45, 47–48, 50, 56–62, 64–68, 70–71, 73. Pl.'s Mot. at 1–2 (Motion Summary Pages). Another list references the same numbered responses, through a listing of "relevant" requests for admission submitted to defendant. Pl.'s Mot. at 7. On the same page, however, plaintiff references other requests for admission not implicated in the original list of challenges, requests for admission numbered 17 (included in requests "10–21"), 49, 63 and 74. *Id.* On the next page of plaintiff's motion, plaintiff references requests for admission numbered 28–29, 40, 46, 51–52, 69 and 75, none of which are implicated in plaintiff's original list of chal-

lenges. *Id.* at 8. In plaintiff's reply brief, in addition to some of defendant's responses challenged in plaintiff's motion, plaintiff apparently challenges response numbered 23 (included in a citation to requests for admission "12 through 24"), which had heretofore not been referenced as an insufficient response by defendant. Pl.'s Reply at 17. After consulting plaintiff's motion and its reply brief, the court has no specific indication of defendant's responses that are being challenged. A regrettable amount of judicial resources has been expended attempting to discern the scope of plaintiff's motion.

Despite these failings, three themes emerge from plaintiff's briefing of its motion. First, plaintiff apparently believes that various private letter rulings issued by the IRS to other taxpayers are relevant to this case. Second, plaintiff apparently believes that authenticating those PLRs, and getting admissions as to the truth of certain statements in those PLRs, is a proper use of RCFC 36(a). Third, plaintiff apparently believes that the IRS is free to divulge information contained in those PLRs and in underlying documents that defendant believes it cannot divulge. For these reasons, plaintiff asserts that defendant's objections to most of its requests for admission are insufficient. Plaintiff's arguments are not persuasive.

## III. Relevance of Private Letter Rulings to This Case

The parties clearly disagree as to the relevance of a private letter ruling, issued by the IRS to one taxpayer, to the litigation of a different tax claim brought by another taxpayer. Plaintiff's argument is founded on assumptions that the court cannot endorse. First, plaintiff states that "[t]he Court of Federal Claims ... has ruled repeatedly that PLRs can be relevant to ongoing litigation, and many cases have explicitly considered PLRs as evidence." Pl.'s Mot. at 8. This statement does not give a full picture of this court's, or other courts', consideration of PLRs in tax cases.[6]

---

**5.** Plaintiff's First Requests for Admission, attached to plaintiff's motion, contains a signature block but no signature, as does the certificate of service attached thereto. This copy was certified

to be a true and correct copy. *See* Pl.'s Mot. Decl. ¶ 3.

**6.** The court notes that plaintiff relies extensively on *Int'l Bus. Machs. Corp. v. United States,* 170

## A. Statutory Guidance and Caselaw Regarding the Relevance of PLRs

■ Private letter rulings, like certain other written determinations issued by the IRS, "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3) (2006). Most courts, therefore, do not find private letter rulings, issued to other taxpayers, to be of precedential value in deciding the tax claims before them. *See, e.g., Lucky Stores, Inc. & Subsidiaries v. Comm'r,* 153 F.3d 964, 966 n. 5 (9th Cir.1998) ("Taxpayers other than those to whom such rulings or memoranda were issued are not entitled to rely on them.") (citations omitted); *Liberty Nat. Bank & Trust Co. v. United States,* 867 F.2d 302, 304–05 (6th Cir.1989) (noting that "private letter rulings are directed only to the taxpayer who requested the ruling [and] ... may not be used or cited to as precedent"); *David R. Webb Co. v. Comm'r,* 708 F.2d 1254, 1257 n. 1 (7th Cir.1983) (stating that "private letter rulings ... may not be used or cited as precedent") (citation omitted); *Fla. Power & Light Co. v. United States,* 56 Fed.Cl. 328, 332 (2003) (*Florida Power I*) (stating that "private letter rulings have no precedential value in that they do not represent the IRS's position as to taxpayers generally and thus are irrelevant in the context of litigation brought by other taxpayers") (citations omitted), *aff'd,* 375 F.3d 1119 (Fed.Cir.2004) (*Florida Power II*); *Abdel–Fattah v. Comm'r,* 134 T.C. No. 10, 2010 WL 1687673, at *8 (Apr. 27, 2010) (declining to consider private letter rulings offered by the plaintiff in support of his tax claim). *But see Glass v. Comm'r,* 471 F.3d 698, 709 (6th Cir.2006) (acknowledging that under section "6110(k)(3), a Private Letter Ruling cannot be used as precedent," but nonetheless commenting that "a recent [private letter] ruling provides persuasive authority for refuting the Commissioner's argument" in that case); *Thom v. United States,* 283 F.3d 939, 943 n. 6 (8th Cir.2002) ("Although private letter rulings have no precedential value and do not in any way bind this court, 26 U.S.C. § 6110(k)(3), we believe they are an instructive tool that we have at our disposal."); *ABC Rentals of San Antonio, Inc. v. Comm'r,* 142 F.3d 1200, 1207 n. 5 (10th Cir. 1998) ("While private letter rulings are not binding authority, they may be cited as evidence of administrative interpretation.") (citations omitted); *Taproot Admin. Servs., Inc. v. Comm'r,* 133 T.C. 202, 237 n. 10, 2009 WL 3098090 (2009) (permitting the submission of a "private letter ruling as evidence of the practice of the Commissioner"). This court in *Vons Cos. v. United States,* 51 Fed. Cl. 1 (2001) (*Vons I*), *modified in part by Vons Cos. v. United States,* No. 00–234T, 2001 WL 1555306 (Fed.Cl. Nov.30, 2001), examined section 6110(k)(3) and relevant caselaw and noted that the use of PLRs in tax litigation is limited.[7] *Vons I,* 51 Fed.Cl. at 9–11 & nn. 9–10. *Vons I* concluded that "most courts have refused to consider private letter rulings as any form of precedent." *Id.* at 9.

■ The *Vons I* court provided an excellent summary of relevant caselaw regarding

---

Ct.Cl. 357, 343 F.2d 914 (1965) (*IBM*), a case with thirty negative citing references on Westlaw, and omits any reference to the precedential limitation of the holding of that case to its facts. *See, e.g., Fla. Power & Light Co. v. United States,* 375 F.3d 1119, 1124 (Fed.Cir.2004) ("We need not decide whether the appellant would be entitled to relief under *IBM,* however, because the decision in *IBM* was effectively limited to its facts by subsequent decisions of the Court of Claims ....") (citations and footnote omitted). Plaintiff perhaps believes that this case falls within the fact pattern of *IBM.* Nonetheless, plaintiff should have alerted the court to the binding precedent limiting the scope of the holding of *IBM,* so that the weight to be accorded *IBM* was clear. *See, e.g., Jewelpak Corp. v. United States,* 297 F.3d 1326, 1333 n. 6 (Fed.Cir.2002) (stating that "officers of our court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand—both good

and bad—of which they are aware") (citations omitted). Plaintiff could not have been unaware of this binding precedent, because another case upon which plaintiff greatly relies discussed, at length, the limits placed on the holding of *IBM. See Vons Cos. v. United States,* 51 Fed.Cl. 1, 10 & nn. 9–10 (2001), *modified in part by Vons Cos. v. United States,* No. 00–234T, 2001 WL 1555306 (Fed.Cl. Nov.30, 2001).

7. The modification of *Vons I* altered language regarding revenue rulings, not private letter rulings, and may have incorrectly indicated the paragraph where the substituted language should be inserted. *See Vons Cos. v. United States,* 2001 WL 1555306, at * 1 (indicating, perhaps in error, that "[t]he first two sentences in the second full paragraph under Part II.B (page 12) of the order ..." should be replaced).

the uses of private letter rulings issued to taxpayers other than the plaintiff in a tax case:

> Private letter rulings and technical advice memoranda, in accordance with section 6110(k)(3) of the Code, may not be used or cited in any precedential way and thus, *a fortiori*, may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative than another. Rather, such rulings and memoranda may be relied upon not for their substance, but only as indication: (i) of the IRS' administrative practice (*i.e.*, that it has issued rulings regarding a particular subject); or (ii) that, under the *IBM* decision, the Commissioner has abused his discretion under [26 U.S.C. § 7805(b) (2006) ] in issuing different rulings to two directly competing taxpayers. More extensive use or citation of such rulings not only flatly ignores the plain language of section 6110(k)(3), but also threatens the careful compromise struck by the Congress in enacting that section-one that recognizes the functional relationship between allowing the IRS to use a streamlined review process to issue such rulings and memoranda on a relatively expedited basis in exchange for assurances that those documents will have no precedential impact except as to the taxpayers to which they are issued.

*Vons I*, 51 Fed.Cl. at 12 (citing *Int'l Bus. Machs. Corp. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914 (1965) (*IBM* )). To summarize the impermissible uses of PLRs identified in *Vons I*, which are really variations on a single theme, PLRs cannot be used or cited as precedent; they cannot be used to advance a particular interpretation of the Internal Revenue Code (I.R.C. or Code); and they cannot be used "for their substance." *Id.* For the sake of simplicity, the court

refers to such impermissible uses of PLRs as the use of PLRs as precedent. To summarize the permissible uses of PLRs identified in *Vons I*, PLRs may be used as evidence of the administrative practice of the IRS, and may, in certain instances, be used in abuse of discretion cases governed by *IBM*.

Assuming that the court understands plaintiff's arguments, plaintiff does not seek to use the private letter rulings in question to establish the administrative practice of the IRS, one of two permissible uses of PLRs.[8] Instead, in the court's view, plaintiff seeks either to impermissibly rely on the PLRs as precedent, or wishes to use the PLRs as evidence of an abuse of discretion, as PLRs were found to be evidence of an abuse of discretion in *IBM*. If *IBM* were indeed applicable to the facts of this case, use of private letter rulings would be permissible as evidence that the IRS had "issu[ed] different rulings to two directly competing taxpayers." *Vons I*, 51 Fed.Cl. at 12. Neither of plaintiff's proposed uses of PLRs is permissible in this case.

### B. Private Letter Rulings Cannot Be Used as Precedent in This Case

█ Plaintiff's motion could be read as an attempt to present a case for using certain private letter rulings as precedent, although plaintiff disavows such an intent. *See* Pl.'s Reply at 9 (asserting that plaintiff "has not cited the PLRs as legal precedent"). Plaintiff justifies its requests for admission by citing "at least 47 PLRs," and asserts that every PLR cited found nuclear power plant decommissioning liabilities to be fixed and reasonably determinable at the time of sale. Pl.'s Mot. at 4–6. Plaintiff suggests that the PLRs "would allow the court to resolve the

---

**8.** Plaintiff references a number of private letter rulings and concludes that "[a]s far as [plaintiff] has been able to determine, the IRS has never ruled that a decommissioning liability is not fixed and reasonably determinable, and, as far as [plaintiff] can determine, none of these rulings have been revoked." Pl.'s Mot. at 6. Although this assertion tangentially implicates the administrative practice of the IRS, plaintiff's arguments focus on the holdings of these private letter rulings, not on the evidence of IRS administrative practice that might be contained therein. For

example, plaintiff argues that some of its requests for admission are proper when they ask defendant to confirm that IRS private letter rulings have stated that "the nuclear decommissioning liabilities at issue in this litigation are fixed and reasonably determinable." *Id.* at 13. The scope of this type of request for admission goes far beyond a desire to ascertain the administrative practices of the IRS; the topic of the request is the substance of those private letter rulings, not the practice of issuing them.

remaining legal questions [in this case] on summary judgment." Pl.'s Mot. at 8. Plaintiff also surveys caselaw concerning the use of PLRs in litigation, and implies that courts routinely rely on PLRs for their decisions. Pl.'s Reply at 7 (citing cases). To the extent that plaintiff intends to rely on PLRs as precedent, *i.e.*, for their substance or for their value in interpreting the I.R.C., the requests for admission submitted to defendant are improper because they seek to rely on PLRs for an impermissible purpose. *See, e.g., Hanover Bank v. Comm'r,* 369 U.S. 672, 686, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962) (noting that taxpayers "are not entitled to rely upon unpublished private rulings which were not issued specifically to them") (citations omitted); *Vons Cos. v. United States,* 55 Fed.Cl. 709, 718 (2003) (*Vons II*) (rejecting arguments based on PLRs because "[t]he truth of the matter is that the IRS 'positions' to which [plaintiff] refers were never intended to be relied upon by any taxpayers except those to which the rulings were directed").

## C. The PLRs Are Not Evidence Relevant to This Case

### 1. *IBM*

Plaintiff strives mightily to squeeze this case into the factual pattern provided by *IBM.* Pl.'s Mot. at 19 ("[Plaintiff] is in the same position as IBM."). To the extent that *IBM* survives as precedent binding on this court, *see Florida Power II,* 375 F.3d at 1124–25 & n. 10 (limiting the holding in *IBM* to its facts, and noting, but not deciding, the question of whether *IBM* had been "effectively overruled" by *Dickman v. Comm'r,* 465 U.S. 330, 343, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984)), the facts of this case do not resemble *IBM* and *IBM* is thus of no avail to plaintiff. *IBM* concerned fundamental inequities in the conduct of the IRS toward two competing sellers of large computers. One corporation was relieved of excise taxes on the large computers it sold for six and a half years, whereas IBM was required to pay such taxes for the same period, despite having sought a favorable private letter ruling relieving it of the excise tax within a few months of the issuance of such a letter to its competitor. 343 F.2d at 915–17. There was no dispute

that the I.R.C. required the payment of the excise taxes in question. *Id.* at 917.

The issue before the Court of Claims was whether the competitor should reap the comparative advantages of an erroneous private letter ruling along with the IRS delays that prevented IBM from obtaining a similar ruling, so that the competitor's excise tax liability was applied only prospectively, while IBM had to suffer the comparative disadvantages of a retroactive application of its excise tax liability. In those circumstances, the court stated that "[e]quality of treatment is so dominant in our understanding of justice that discretion [to apply tax liabilities retroactively], where it is allowed a role, must pay the strictest heed." *Id.* at 920. The *IBM* court held that it was an abuse of discretion to thus favor the competitor over IBM, and that the provision of the I.R.C. that allowed retroactive application of the tax laws, 26 U.S.C. § 7805(b), did not permit such unfettered discretion. 343 F.2d at 920 (stating that the IRS "does not have carte blanche"). In the *IBM* case, the Court of Claims found "a manifest and unjustifiable discrimination against the taxpayer" and ordered the IRS to refund IBM's excise taxes for the relevant period. *Id.* at 923, 925.

To summarize *IBM,* then, a taxpayer plaintiff who (1) learns of a favorable private letter ruling issued to its direct competitor, (2) promptly attempts to secure a similar letter, (3) encounters significant delay in obtaining a ruling from the IRS, (4) pays taxes for a lengthy period during which time its competitor is relieved from paying the same taxes due to an erroneous private letter ruling, (5) sues once that competitor's favorable ruling has been revoked only prospectively whereas its own tax liability has been applied retroactively, would likely be able to show that the IRS abused its discretion under I.R.C. § 7805(b). *Cf. Florida Power II,* 375 F.3d at 1124–25 & n. 12 (recounting most of these facts, and noting in particular the delays encountered by IBM in obtaining its private letter ruling). Here, there is no allegation that the private letter rulings issued to the sellers of the nuclear power plants were erroneous (indeed, they are reputed to be just the opposite), or that unfair retroac-

tive application of the tax laws is at issue in this case. *Vons I*, 51 Fed.Cl. at 10 (noting that *IBM* "applies only where ... the taxpayer denied the favorable ruling is arguing that the Commissioner abused his discretion under section 7805(b) by failing to apply a new legal position only prospectively") (citations omitted). Because *IBM* has been limited to its specific facts and since plaintiff's tax situation fails to reflect *IBM's* factual scenario, *IBM* provides no support for the relevance of private letter rulings to this case.

#### 2. *Oshkosh*

Plaintiff also relies extensively on *Oshkosh Truck Corp. v. United States*, 123 F.3d 1477 (Fed.Cir.1997). Plaintiff quotes this statement from *Oshkosh:* "[U]nless there is a rational reason for different treatment, similarly-situated taxpayers should be treated similarly." *Id.* at 1481. *Oshkosh* concerned the unfavorable tax treatment of Oshkosh's sales of trucks to the government, when the sales of certain trucks and trailers by other manufacturers received more favorable tax treatment. The United States Court of Appeals for the Federal Circuit held that the IRS abused its discretion by applying its own regulations differently to similarly-situated taxpayers. *Id.*

■ Although the cited comment in *Oshkosh* implies that inconsistent rulings issued to similarly-situated taxpayers might be additional grounds for overturning an IRS ruling on tax liability in some circumstances, *Oshkosh* should not be read too broadly. The result in *Oshkosh* restrained the Department of the Treasury from frustrating the intent of Congress, as that intent was expressed in one section of the Code. 123 F.3d at 1481. A Treasury regulation had exempted certain sales from the increased taxes imposed in that code section. Because the sales by Oshkosh "did not involve the problem that Congress intended to reach" with the increased taxes required by that code section, the exemption of other manufacturers' sales, but not Oshkosh's sales, was arbitrary and unsupportable. *Id.* The lesson of

*Oshkosh* is that "drawing an arbitrary distinction between similarly-situated taxpayers" may not survive judicial review, *Florida Power II*, 375 F.3d at 1125 n. 13, if the distinction is not supported by the Code. *Oshkosh* nowhere discusses private letter rulings, and cannot be interpreted to support plaintiff's motion.[9]

■ Plaintiff interprets *Oshkosh* as placing a general ban on inconsistent rulings in similar cases, and states that it "is entitled to explore the possibility that it is being subjected to unequal treatment." Pl.'s Reply at 12; *see also* Pl.'s Mot. at 18 (citing *Computer Scis. Corp. v. United States*, 50 Fed.Cl. 388 (2001) (*Computer Sciences* ), for the proposition that "it [i]s improper for the IRS to treat similarly-situated taxpayers differently without a rational basis for the difference"). As this court said in *Vons I*, however, "the manifest weight of precedent rejects a 'least common denominator' notion of federal taxation, in which the law that the Congress actually enacts can be short-circuited and disregarded any time the IRS has afforded a single taxpayer or even a group of taxpayers treatment more favorable than the law provides." 51 Fed.Cl. at 10 n. 10. If plaintiff is entitled to the tax treatment it requests in this suit, that entitlement will come from the Code, not from a comparison with private letter rulings issued by the IRS. *See Oshkosh*, 123 F.3d at 1481 (rejecting the government's position because its interpretation of the relevant tax provision was inconsistent with the intent of Congress). If plaintiff is not entitled to the tax treatment it requests, a comparison with PLRs, correct or erroneous, is irrelevant. *See Vons II*, 55 Fed.Cl. at 718 (noting that "nothing prevent[s] the IRS from 'changing' its position, provided that its 'new' view is supported by the [relevant tax] statute"); *see also* Def.'s Opp. at 9–10 (citing cases disregarding PLRs as precedent). Plaintiff's reliance on *Oshkosh* does not further its contention that PLRs are relevant to this case.

---

9. The court, in the context of this discovery dispute over PLRs, need not reach the issue of whether plaintiff, as a purchaser of nuclear pow-

er plants, is "similarly-situated" to sellers of nuclear power plants, in regards to the tax treatment of assumed decommissioning liability.

### 3. The Sellers' PLRs Do Not Bind the IRS

■ Plaintiff also suggests that "the PLRs [cited by plaintiff] are likely binding on Defendant in this action." Pl.'s Mot. at 8. This statement is not supported by the weight of authority consulted by the court.[10] Indeed, there is no plausible reading of precedent that supports this view. *See, e.g., Am. Stores Co. v. Comm'r*, 170 F.3d 1267, 1270 (10th Cir.1999) ("It is well settled that [private letter rulings] do not bind the Commissioner or this court.") (citations omitted); *Florida Power I*, 56 Fed.Cl. at 334 (stating that a "plaintiff cannot claim entitlement to a particular tax treatment on the basis of a [private letter] ruling issued to another taxpayer" (citing *Hanover Bank*, 369 U.S. at 686, 82 S.Ct. 1080)).

Plaintiff relies, in support of its contention that defendant is bound by PLRs issued to other taxpayers, on decisions by this court which rely on *IBM* and *Oshkosh*. *See* Pl.'s Mot. at 18 (citing *Computer Sciences*, 50 Fed.Cl. at 388; *Bunce v. United States*, 28 Fed.Cl. 500, 509 (1993), *aff'd*, 26 F.3d 138, 1994 WL 118048 (Fed.Cir.1994) (table)). The court notes that decisions in other cases before this court are not binding in this proceeding. *See W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed.Cir.1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted). To the extent that plaintiff's reading of *Computer Sciences* asserts that defendant is bound by PLRs issued to other taxpayers, this court agrees with the *Vons I* court that such a reading goes against binding precedent. *See Vons I*, 51 Fed.Cl. at 10

n. 10. *Bunce*, on the other hand, discussed IBM only in the particular context of the IRS's discretion in reaching settlements with taxpayers, and has no applicability to the facts of this case. Thus, plaintiff, despite its citations to *Computer Sciences* and *Bunce*, has not overcome strong contrary authority in *Florida Power I*, *Vons I* and *Vons II* which indicates that the government is not bound in this case by PLRs issued to other taxpayers.

The only other case extensively cited by plaintiff is *Corelli v. Comm'r*, 66 T.C. 220, 1976 WL 3603 (1976). Pl.'s Mot. at 11, 18; Pl.'s Reply at 4–8. *Corelli* is cited by plaintiff as support for the proposition that the sellers' PLRs are relevant to this case, and for the proposition that the government is bound by the sellers' PLRs. *Corelli* also held that requests for admission concerning a PLR issued to another taxpayer must be answered by the IRS. Because *Corelli* is often cited by plaintiff, the court has examined this case for its persuasive value. *See, e.g., Southland Royalty Co. v. United States*, 22 Cl.Ct. 525, 530 (1991) ("Although Tax Court decisions are not binding on [this] Court, the court will follow these decisions if the underlying rationale is persuasive.") (citation omitted).

The court notes first that no other court has relied upon *Corelli* to hold that PLRs are relevant or binding, or that requests for admission regarding PLRs must be answered by the IRS. In fact, *Corelli* has been cited only once by a court, as support for this phrase: "even if the private letter rulings [sought by the petitioner in that case] can be viewed as potentially relevant." *Davis v.*

---

10. Plaintiff relies on *IBM* and *Oshkosh*, among other authorities, for its theory that defendant is bound in this case by its private letter rulings issued to other taxpayers. *See* Pl.'s Mot. at 13, 17–19. For the reasons stated in this opinion, *see supra*, the facts in *IBM* are distinguishable from this case and *IBM* does not support plaintiff's contentions. *See Florida Power II*, 375 F.3d at 1124 (limiting the holding in *IBM* to its facts). Similarly, for the reasons stated in this opinion, *see supra*, *Oshkosh* cannot be used to exempt plaintiff from tax treatment imposed by the Code, or to estop defendant from correctly applying the Code. *See Auto. Club of Mich. v. Comm'r*, 353 U.S. 180, 183–84, 77 S.Ct. 707, 1 L.Ed.2d 746

(1957) ("The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law.") (citations omitted); *Vons II*, 55 Fed.Cl. at 718 ("[I]t is axiomatic that the IRS simply is not estopped from changing its views of the law, even retroactively and even if a taxpayer has relied to its detriment on the earlier position." (citing *Dixon v. United States*, 381 U.S. 68, 72–73, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Vons I*, 51 Fed.Cl. at 6)). Precedent does not hold that the United States, in this case, is bound by its previous rulings in the PLRs, correct or incorrect, that were issued to the sellers of the nuclear power plants.

*Comm'r*, 69 T.C. 716, 722, 1978 WL 3424 (1978). In *Davis*, the Tax Court noted in an explanatory footnote the somewhat unusual holding of *Corelli:* "a private letter ruling issued by respondent to an applicant other than the taxpayer, but covering contractual arrangements among taxpayer and others was held relevant in the determination of whether the taxpayer's actions were due to negligence or intentional disregard of rules and regulations." 69 T.C. at 723 n. 10.

Mr. Corelli sought discovery and admissions related to a private letter ruling issued to another taxpayer as part of his defense against a negligence penalty for underpayment of income taxes. *Corelli*, 66 T.C. at 221. The private letter ruling was issued to an accounting firm, and discussed the contractual relationships between Mr. Corelli, the Metropolitan Opera, and foreign corporations which appear to have been agents or impresarios arranging for Mr. Corelli to perform "personal services" for the Metropolitan Opera.[11] *Id.* at 221–22. One of the issues before the Tax Court was whether Mr. Corelli's reliance on the private letter ruling issued to the accounting firm would preclude a finding of negligence or intentional disregard of tax rules and regulations. *Id.* at 223.

The unique facts of *Corelli* might present some corollaries if this were a case of negligence penalties that might or might not be justified, depending on the contents and circumstances of a private letter ruling issued to one of the parties to an employment arrangement. As it is, however, Mr. Corelli's circumstances are distinguishable from this case, and, in any event, *Corelli* does not provide persuasive authority as to the relevance or binding nature of the sellers' PLRs in this action. For these reasons, the court rejects plaintiff's reliance on *Corelli*, for any purpose, including its ruling compelling the IRS to answer requests for admission regarding a PLR issued to another taxpayer.

4. **Plaintiff's Status, as an Interested Party or as a Buyer, Does Not Render the PLRs Relevant**

▮ Plaintiff argues that its status as an interested party in the transactions that were the subject of the PLRs somehow makes those PLRs relevant to its tax claims in this suit. Pl.'s Mot. at 16; Pl.'s Reply at 10. Plaintiff relies solely on private letter rulings, issued in entirely different contexts, as support for this contention. As stated *supra*, private letter rulings are not precedential and this court accords them no precedential weight. Furthermore, plaintiff has not convinced the court that its status as an interested party in other taxpayers' requests for PLRs renders the PLRs issued to those taxpayers relevant to this case.

Plaintiff next contends that "[s]ection 6110(k)(3) does not bar reliance on a PLR by a taxpayer whose tax liability is directly involved in a ruling." Pl.'s Reply at 8. In essence, plaintiff argues that AmerGen's status as the buyer of nuclear power plants renders the PLRs issued to the sellers of those nuclear power plants relevant, because the sellers' PLRs implicate the transaction involving AmerGen. Pl.'s Mot. at 12–13, 18–19; Pl.'s Reply at 8. Plaintiff relies on a variety of authorities for this proposition, none of which are binding on this court and all of which appear to be distinguishable on their facts. None of these cases persuades the court that the PLRs in question have any relevance to the issues to be decided in this case. Those PLRs cannot, in these circumstances and under binding precedent, determine the result in this case and are thus irrelevant. *See, e.g., Florida Power I*, 56 Fed.Cl. at 334 (stating that "plaintiff cannot claim entitlement to a particular tax treatment on the basis of a ruling issued to another taxpayer" (citing *Hanover Bank*, 369 U.S. at 686, 82 S.Ct. 1080)).

IV. **Proper Use of Requests for Admission**

The court has found that the facts of this case are not within the factual bounds of the ruling in *IBM*. In addition, the court has found that the PLRs issued to the sellers of the nuclear power plants are irrelevant to the subject matter. In these circumstances, it is clear that requests for admission related to the sellers' PLRs are objectionable. *See,*

---

11.   Franco Corelli was a celebrated Italian tenor.

*e.g., Shakespeare Co. v. United States,* 182 Ct.Cl. 119, 389 F.2d 772, 777 (1968) (denying the production of private letter rulings to a plaintiff in part because "no court has held a private ruling binding on the government against other taxpayers") (citations omitted); *Vons I,* 51 Fed.Cl. at 10 (noting that "*IBM* only ever so slightly expands the realm in which private letter rulings may be used or cited"); *Cederloff,* 2010 WL 157512, at *2 (denying requests for admission as to the treatment of other taxpayers, because "[e]ven if these requests were admitted, ... Plaintiff's law suit would be no more likely to prevail"). The PLRs at issue here are irrelevant and defendant shall not be required to respond to requests for admission regarding these PLRs.[12]

Plaintiff points to *Vons I* as an example of this court requiring the IRS to respond to requests for admission regarding private letter rulings issued to other taxpayers. Pl.'s Mot. at 11–12; Pl.'s Reply at 16–17. The court reproduces one of plaintiff's contentions in this regard:

> In *Vons [I]*, which Defendant asserts supports its position, the Court required the defendant to answer requests for admission to establish the authenticity of certain PLRs, and *specifically noted that the PLRs were relevant* to determine whether "under the *IBM* decision, the Commissioner has abused his discretion under section 7805(b) of the Code in issuing different rulings to two directly competing taxpayers." 51 Fed.Cl. at 12.

Pl.'s Reply at 16 (emphasis added and unrelated footnote omitted). The court has searched *Vons I,* a rather lengthy and thorough opinion, for a sign that the *Vons I* court "specifically noted that the PLRs [sought by the plaintiff in that case] were relevant." Pl.'s Reply at 16. Instead, the court found this statement regarding two PLRs sought by the plaintiff in that case:

> Because these documents [including two PLRs] are not the originals issued by the IRS and *because they have potential relevance to the case, albeit limited,* plaintiff's admission requests seeking to confirm the

genuineness of these documents are appropriate. . . .

*Vons I,* 51 Fed.Cl. at 14 (emphasis added).

It is clear from the court's ruling in *Vons I* that certain private letter rulings were potentially relevant, either to establish an administrative practice of the IRS, or to determine the applicability of the holding of *IBM* to the facts and arguments in that case. *See Vons I,* 51 Fed.Cl. at 12 (noting that these two uses of private letter rulings were permitted, but that PLRs could not be relied upon "for their substance"). Plaintiff in this case cannot rely on *IBM* and does not seek to establish evidence of an administrative practice of the IRS, as discussed *supra.* Instead, plaintiff asks this court to rely upon the substance of the PLRs issued to the sellers of the nuclear power plants, a use of PLRs not condoned by *Vons I.* Plaintiff's reliance on *Vons I* is misplaced.

## V. Statute Restricting Disclosure of Taxpayer Information

The court briefly notes defendant's argument that even if the sellers' PLRs were relevant, plaintiff's requests for admission run afoul of 26 U.S.C. § 6103 (2006). According to defendant, § 6103 "prohibits the disclosure of the identity and other identifying information about recipients of private letter rulings." Def.'s Opp. at 13. As plaintiff points out, there are exceptions to the confidentiality requirements of § 6103(a) allowing disclosure in judicial proceedings, which are found in § 6103(h)(4)(B)-(C). Pl.'s Mot. at 20–21; Pl.'s Reply at 3–5. Plaintiff assures the court that this case falls within § 6103(h)(4)(C), and cites two Tax Court cases, neither of which cites, never mind discusses, § 6103(h)(4)(C). Pl.'s Reply 4–6. The court finds that neither party has adequately briefed the applicability of § 6103 to the facts of this case.

In *Vons I,* the court applied § 6103 to that plaintiff's requests for admission concerning certain private letter rulings and other documents. 51 Fed.Cl. at 15–19. After discussing certain ambiguities found in § 6103, and

---

12. Nor shall defendant be compelled to authenticate these PLRs in the manner proposed by plaintiff. *See* Pl.'s Reply at 15–17; Def.'s Opp. at 7–8.

engaging in a thorough consideration of the legislative history of the statute, the court found that § 6103 prevented disclosure of what might have been relevant information contained in those PLRs and other documents. *Id.* at 19 (stating that just "because a document meets the evidentiary relevancy standard does not mean that it also meets the disclosure requirements" of § 6103(h)(4)(B)). Here, the parties have barely scratched the surface of the text of the statute, have cited no relevant cases, and have offered only one sentence fragment of relevant legislative history. *See* Pl.'s Reply at 4. Because the court has determined that the requested PLRs are not relevant in the first instance, the court will not decide, on this record, if § 6103 imposes another barrier to plaintiff's requests for admission.[13]

## CONCLUSION

For all of the above reasons, the court denies plaintiff's motion. To the extent that plaintiff's motion might have included a challenge to defendant's responses that cited a need to conduct further discovery before otherwise responding to plaintiff's requests for admission, such a challenge is also denied.[14] To the extent that plaintiff's reply brief might request that the court compel defendant to answer plaintiff's first set of interrogatories and second request for document production, that request is denied as well. The court urges the parties to cooperatively resolve further discovery issues as expeditiously as possible.

Accordingly, it is hereby **ORDERED** that plaintiff's Motion to Compel Answers to Requests for Admission is **DENIED.**

---

13. A court's decision to approve disclosure of taxpayer information under 26 U.S.C. § 6103(h)(4)(C) appears to be case specific. *See, e.g., Lebaron v. United States,* 794 F.Supp. 947, 951–53 (C.D.Cal.1992) (analyzing whether the disclosed tax return information would directly affect the resolution of issues in that case); *Heimark v. United States,* 14 Cl.Ct. 643, 647–51 (1988) (same).

14. Defendant's responses numbered 23, 29, 46, 52, 69, and 75 state that "[t]he United States is currently conducting discovery concerning this issue." The sufficiency of the responses citing this rationale does not appear to have been directly challenged by plaintiff.